# IN THE COURT OF APPEALS OF IOWA

No. 24-0786
Filed September 4, 2024

**IN THE INTEREST OF I.D., M.M., A.M., M.M., and L.M.,**
**Minor Children,**

**G.D., Father,**
    Appellant,

**A.D., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, Judge.

Parents separately appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**

Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for appellant father.

Morgan Fritz of Iowa Legal Aid, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Robin Himes of Linn County Advocate, Cedar Rapids, attorney for minor children.

Robin O'Brien Licht, Cedar Rapids, guardian ad litem for minor children.

Considered by Ahlers, P.J., Badding, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BOWER, Senior Judge.**

Parents separately appeal the termination of their parental rights. The mother's appeal concerns the termination of her parental rights to her five children: L.M., born in 2007; M.M., born in 2008; A.M., born in 2009; M.M., born in 2014; and I.D., born in 2019. The father's appeal concerns the termination of his parental rights to his child, I.D.[1] Both challenge the statutory grounds for termination. They also claim termination is not in the children's "best interests"—the mother by pointing to her bond with the children and the father by requesting additional time. Upon review, we affirm the parents' appeals.

## I.    *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Health and Human Services in May 2021, upon reports of sexual abuse of the older children by adult males allowed in the family's home. The children were adjudicated in need of assistance (CINA) but remained in the parents' custody, and services were provided to the family. By May 2022, the department determined the parents had addressed the safety concerns present in the home, and the CINA case was dismissed.

Within a few weeks, the department learned the mother was continuing to allow one of the sexual offenders to have access to the children but was "making the children be quiet about [his presence in the home]." The maternal grandmother also told the children not to tell the department. The parents stipulated to the children's adjudication as CINA, and the children were removed from their custody.

---

[1] The father of the older four children does not appeal the termination of his parental rights.

In hindsight, the department realized "there was a sexual offender still living in the home and sexually abusing the children during [the first] open case."[2]

Weekly supervised visits took place with both parents and all five children until March 2023, when the department learned the father had sexually abused the second oldest child "since she was five." An assessment ensued, which resulted in founded reports for denial of critical care and sexual abuse. Subsequently, the father was allowed supervised visits with I.D. only. According to the family support specialist, both parents attended visitation fairly consistently and visits "[p]retty much . . . went okay." However, some of the older children began choosing not to attend visits with the mother.

The parents completed mental-health psychosexual evaluations, which recommended therapy. The mother reported she was involved in individual therapy. The father maintained he did not need therapy because he had completed a separate evaluation that did not recommend it. The father failed to follow the department's directive to provide his separate evaluation to a therapist.

The parents admitted to a history of methamphetamine and marijuana use. They were ordered to participate in "random drug testing at a minimum of four times per month." They were inconsistent in testing, but when they appeared for tests, the results were negative for all substances.

By the permanency hearing in May, the oldest three children were reporting to the department they "do not feel safe when they are with th[ei]r mom and [I.D.'s father]." The department opined, "At this time the parents still have not gained

---

[2] Criminal charges were filed against two individuals relating to sexual abuse of the children.

insight into how their actions have led to the trauma of their children." The State initiated termination-of-parental-rights proceedings in June.

The termination-of-parental-rights trial took place in October. The family support specialist (FSS) provider testified visits had not taken place in the parents' home or progressed beyond fully supervised "[b]ecause the parents haven't done the work that is required for them to move forward." The department caseworker testified the mother stopped engaging in treatment "[a]t least a month or two" ago, she stopped participating in solution-based casework around May 2023, and the father "continued to believe that he does not need to go to therapy so he has not participated." The caseworker testified the parents were called to drug test forty-one times throughout the case but showed up only fourteen times. Their last testing date was in April, nearly six months prior to the termination hearing. She stated the department "still [has] concerns" they might be using illegal substances.

Although the mother admitted to the caseworker "that she knows she messed up" by allowing sexual abusers around the children, the caseworker opined "there's still concern" about the safety of the children given the parents' prior denial of the abuse. The caseworker also detailed interactions indicating the mother was still communicating with one of the sexual abusers using an alias. The department and guardian ad litem recommended termination of parental rights.

The oldest child and three youngest children were placed together with a pre-adoptive foster family. The children were thriving in the placement and making progress socially and academically. The second oldest child was in a qualified residential treatment program (QRTP) with no scheduled discharge date, but she was making progress toward a future placement in a foster home. The oldest two

children testified at trial, requesting the mother's parental rights be terminated. Neither parent presented additional evidence, but both asked for an additional six months to work toward reunification.

The court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(d), (f), and (i) (2023) and the father's parental rights under the same grounds. The mother and father separately appeal.

## II.    Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Upon review, our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    Analysis

We review terminations of parental rights de novo, asking whether (1) a statutory ground for termination is satisfied, (2) the children's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). Starting with the first step, both parents challenge the sufficiency of evidence supporting the grounds for termination. However, neither articulates a basis for relief under paragraphs (d) and (i). The mother challenges one of the elements in paragraph (f), arguing the State failed to show the children could not be returned safely to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4).

When, as here, the parents' rights are terminated under multiple statutory grounds, we may affirm on any ground supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). As neither parent makes an argument to challenge the grounds authorizing termination under paragraphs (d) and (i),[3] they waive any claim of error on those grounds. *See In re N.N.*, No. 21-1978, 2022 WL 610318, at *1 (Iowa Ct. App. Mar. 2, 2022) (holding failure to challenge one of the grounds for termination permits us to affirm on that ground without analyzing other grounds challenged). Accordingly, we affirm the juvenile court's determination the statutory grounds authorizing termination of the parents' respective rights are satisfied under section 232.116(1)(d) and (i).

Turning to the second step, both parents claim termination is not in the children's "best interests"—the mother by pointing to her bond with the children and the father by requesting additional time. When considering whether termination is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Neither parent addresses how these factors weigh against termination.

Relating to the mother, although she points to the "strong relationship" she shares with "[m]ost of the children," "[c]onsideration of the parent-child bond is not

[3] We do not consider the mother's stark claim of error "pursuant to Iowa Code Section 232.116(1)(d)(f)(i)," without further elaboration, sufficient to raise a challenge to termination under paragraphs (d) and (i). *See In re G.B.*, No. 23-1986, 2024 WL 1551282, at *1 (Iowa Ct. App. Apr. 10, 2024) ("[T]he mother does not develop these references into reviewable arguments, so we deem them waived.").

part of our best-interests analysis." *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023). Construing her claim as a request for us to apply the permissive exception to termination in section 232.116(3)(c)—which authorizes the court to decline to terminate parental rights when it "would be detrimental to the child . . . due to the closeness of the parent-child relationship"—we conclude the exception does not apply in this case. The oldest child testified she would "[a]bsolutely not" feel safe if she was living with the mother. The second oldest child testified the mother has "really been failing us." The middle children equivocated on their preferences, and I.D. was too young to express an opinion, but the record is clear the children were thriving in their current placement. The mother presented no evidence the children would suffer physically, mentally, or emotionally upon termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception.").

As to the father, he generally claims termination is not in I.D.'s best interests because the court could have continued the termination trial for six months to provide him "additional opportunities" to work toward reunification. We address his claim as raised. The FSS provider opined the child is "ready to move on at this point," stating all the children "have been with this for a long time and they do need stability." The department caseworker testified similarly, stating the children "are ready to move on and move forward with their lives." The father has not enumerated what specific factors, conditions, or expected behavioral changes will alleviate the need for removal at the end of an extension. *See* Iowa Code § 232.104(2)(b). Upon our review of the record presented, we cannot either. We affirm the court's denial of the father's request for an extension of time.

***IV.*** **Conclusion**

We affirm the termination of both parents' rights.

**AFFIRMED ON BOTH APPEALS.**